UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALFREDO M. VASQUEZ,

Plaintiff,

v.

C. KOENIG,

Defendant.

Case No. 19-cv-02950-EMC

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Alfredo Vasquez, a prisoner currently incarcerated at the Correctional Training Facility in Soledad, filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and Mr. Vasquez has not filed a traverse. Mr. Vasquez's petition is now before the Court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be denied.

## II. BACKGROUND

Mr. Vasquez was charged in San Mateo Superior Court with lewd and lascivious acts on a child under the age of 14, sodomy with a person under the age of 16, sexual intercourse with a child under the age of 16, oral copulation with a child under the age of 16 and felonious threats. 2CT at 468-99.

The California Court of Appeal summarized the trial testimony as follows:

> Jane Doe was born in Guatemala in 1995. Vasquez is her father. Jane lived in Guatemala with her grandparents until 2006 when, at age 11, she moved to California to reside with her parents. When Jane first joined her parents in their apartment, her aunt and a sister slept in the only bedroom. The rest of the family slept on blankets

on the living-room floor. Jane would lay on her side, with Vasquez sleeping behind her. At some point, the sleeping arrangements changed. Jane and Vasquez slept in one of the beds in the bedroom, while Jane's mother and two younger siblings slept in the other bed. Since her parents both worked at night as janitors, they usually slept during portions of the day, including during the early-evening hours after dinner before they left for work.

On November 9, 2010, Jane skipped school because she "didn't want to be" there. Instead, she and her boyfriend went to a park for several hours and then spent time together at a mall. Thereafter, she and her boyfriend went to a friend's house. According to this friend, Jane had been with her boyfriend for several months and really wanted to be with him, despite Vasquez's objections. Jane had previously disclosed to the friend that her father, Vasquez, had been abusing her. The friend told her mother, who then talked to Jane. After discussing the situation, the police were called.

When she was interviewed by the police, Jane disclosed that Vasquez began touching her inappropriately when she was 11 years old. Specifically, he would rub her through her clothes on her butt, vagina, and breasts while they were laying down to sleep in the evenings on the living-room floor. This happened about three or four times when she was 11. According to Jane, Vasquez had intercourse with her for the first time when she was 12. At that time, her mother was attending "baby school" with Jane's infant sister on Saturdays and Sundays, and Jane believed the first act of intercourse occurred on a weekend while her mother and sister were at this baby school. Thereafter, intercourse continued about three or four times a month. Jane's mother and sister attended the baby school regularly for about two years. After that, Vasquez continued to have intercourse with her while her mother slept or was in the shower. The last time was about three weeks before she spoke to the police. Jane also remembered painful anal intercourse when she was 14. Initially, this appeared to be ongoing, but later in the police interview she clarified that it had only happened once because she had cried. In addition, Vasquez started putting his penis in Jane's mouth when she was 15. He did this a total of six to ten times. Vasquez also performed oral sex on Jane; she believed this occurred from the time she was 11, although she was not certain.

When she was 13, Vasquez told Jane their sexual acts were normal and not wrong. Later, he cautioned her that she should not tell her friends because he could go to jail. Jane did tell her mother that Vasquez "raped" her when she was 13, but her mother did nothing to protect her. According to Jane, Vasquez was adamant that she not have a boyfriend. On the day she disclosed the abuse to her mother, Vasquez had learned she was electronically communicating with a boyfriend and was very angry. He kneed her in the back, slapped her face, gave her a nosebleed, and broke her laptop computer. The week before Jane spoke to the police, Vasquez saw Jane with her current boyfriend at the bus stop and yelled at her, threatening to beat her up. In the end, he slapped her while complaining about the boyfriend.

After her interview, Jane made two pretext calls to Vasquez at the



United States District Court
Northern District of California

behest of the police. In the second call, she told him she was afraid because a teacher believed she and Vasquez were having sex. Vasquez responded, "Oh[,] don't be embarrassed[,] let's see how we can fix that." He also reminded her he had told her in the past not to say anything. Vasquez additionally stated, "I always asked you if you really loved me or just out of fear." He further claimed: "[E]verything that happens with you is not by force. No. Everything happens willingly." Vasquez also urged Jane to return home, stating that he would not harm her, despite his earlier threat to beat or kill her.

In an interview with police after he was arrested, Vasquez initially stated the sex happened "maybe once" when Jane was "like fourteen" and was an act of stupidity. He claimed Jane was lying about things starting when she was 11. Vasquez later admitted that the sex happened "once in a while," starting when Jane was 14 "more or less." Vasquez specifically admitted that he touched Jane in a sexual way for about six months, then had intercourse with her maybe once a month. He acknowledged two acts of anal sex and also stated Jane would put his penis in her mouth, and he would perform oral sex on her. Vasquez stated this happened because Jane fell in love with him. He admitted that he had recently threatened to kill Jane because she had a boyfriend.

As a result of Jane's disclosures and the ensuing investigation, an amended information was filed in San Mateo County Superior Court on November 13, 2013, charging Vasquez with 36 felony counts of lewd and lascivious acts on a child under the age of 14 (Pen. Code, § 288, subd. (a)2); one felony count of sodomy with a person under the age of 16 (§ 286, subd. (b)(2)); ten felony counts of sexual intercourse with a child under the age of 16 (§ 261.5, subd (d)); 21 felony counts of oral copulation with a child under the age of 16 (former § 288a, subd. (b)(2), now § 287, subd. (b)(2)); and one count of felonious threats (§ 422).

During the trial, Jane's testimony regarding the alleged abuse was both consistent and inconsistent with her earlier police interview. For instance, Jane continued to maintain the lewd touching began when she was 11, but stated it went on three or four times a month until she was 15. Jane confirmed intercourse began when she was 12 and happened three to four times a month thereafter. However, she testified that, after the first time, intercourse happened in the evenings when she was 12 and 13 and stated she did not remember whether her mother was attending baby school after the first occurrence. According to Jane's trial testimony, the first incident of anal intercourse happened when she was 13 (not 14, as stated during her interview), and the episode with the broken computer happened about six weeks before she disclosed the abuse to the police (not on the day she disclosed to her mother, as she had told the police). Jane also testified at trial that Vasquez never threatened to hurt her.

Jane's brother and sister testified at trial about the family's living arrangements. Her brother did not think the sex happened. Her sister testified she never saw Vasquez alone with Jane. Jane's cousin and uncle both testified Vasquez was not a violent person. Finally, a representative from an early-intervention program for

> children with special needs testified that Jane's mother and baby sister attended several times a week from April 2008 to May 2009, but never on weekends.

*People v. Vasquez*, 2019 WL 337077, *1-3 (Cal. Ct. App. Jan. 28, 2019) (footnotes omitted).

A. Procedural History

On November 21, 2013, a jury found Mr. Vasquez guilty of 68 felonies arising out of the sexual abuse of Jane Doe. *Id*. at *1. On March 20, 2015, the trial court sentenced him to an aggregate term of 48 years in state prison. *Id*. at *3.

Mr. Vasquez appealed. The California Court of Appeal affirmed his conviction. *Id*. at *1. The California Supreme Court summarily denied the petition. Answer, Ex. 3 at 48 of 67. Mr. Vasquez then filed this federal habeas petition. Petition, Docket No. 1. His claims are that: (1) the trial court erred by excluding evidence that Jane Doe had sexual intercourse with her boyfriend on the day she disclosed Mr. Vasquez's sexual abuse to the police, and (2) the trial court erred by giving a modified unanimity instruction that may have led the jury to convict without being truly unanimous. Petition at 5.

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in San Mateo County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## V. DISCUSSION

### A. Exclusion of Evidence

Mr. Vasquez asserts that his right to present a defense and confront witnesses was violated when the trial court excluded evidence that Jane and her boyfriend had sexual relations on the day she reported the abuse to police. Petition at 5.

#### 1. Background

During trial but outside of the presence of the jury the trial court held a hearing regarding

the evidence pursuant to Evidence Code section 782. *Vasquez*, 2019 WL 337077 at *3. Trial counsel for Mr. Vasquez argued that Jane's sexual activity with her boyfriend on the day she contacted police was highly probative regarding her credibility. *Id*. He alleged that the sexual activity was inconsistent with the emotional and traumatic step of contacting police. *Id*. The trial court disagreed and excluded the evidence in a lengthy ruling. *Id*.

The state appellate court summarized the proceedings as follows:

> Preliminarily, the [trial] court noted Jane's decision to leave school and be with her boyfriend on that day cut both ways with respect to her credibility. In fact, the court found it not "necessarily unlikely" Jane might have wanted to be out of school and with her "best friend in the world," even being intimate, on such a day. The court then correctly framed the issue before it as follows: "The question for this court is whether the fact that they were intimate that day has any relevance, and if it has any relevance to her credibility as a witness . . . whether the fact of being intimate over that hour and a half is so probative of her credibility that it outweighs the prejudicial nature of delving into that testimony. It's not relevant as to whether or not she consents to an act with her father in any way. [¶] . . . [¶] And that's the nub of it, whether or not—everything else that happened that day can be reported and examined on, but for—including that they went to a private place in the park where they could be alone, but for whether they engaged in sexual conduct at that time or not. And counsel's argument seems to be that it strains credulity that a 15-year-old girl in an emotional situation like that would have intimate relations with a 15- or 16-year-old boy to such an extent that it is probative more than it is prejudicial."
>
> After indicating it had heard testimony and argument, reviewed the pleadings, and considered relevant case law and treatises, the trial court found Jane's sexual activity on the day in question to be, "if relevant at all, . . . of de minimis relevance to her credibility as a witness, at most. That's if it's relevant at all. But it is undeniably prejudicial, insofar as it is—or could be taken as bad character evidence of the complaining witness and used in that fashion more so than as an explanation for anything she did or didn't do vis-a-vis reporting her father that, under [Evidence Code section] 352, I think it is far more prejudicial than it is probative."

*Vasquez*, 2019 WL 337077 at *3.

The California Court of Appeal agreed with the trial court and rejected Mr. Vasquez's claim. The court stated:

> We agree with the trial court. Jane's intimate act with her boyfriend on the day she spoke to the police had little, if any, relevance to her credibility with respect to the charged offenses. While the fact that Jane had a boyfriend against her father's wishes was arguably relevant to her credibility—giving her a potential motivation to lie

about the abuse—other evidence admitted at trial made this clear, and defense counsel mentioned it repeatedly during closing argument. Thus, the jury was well aware Jane's relationship with her boyfriend might have given her a reason to fabricate the molestation allegations. That Jane and her boyfriend had been intimate on the day she first met with police adds little to this mix, especially given the significant boost her credibility had already received from Vasquez's admission that the sexual abuse she described after age 14 actually occurred.

Defense counsel's trial theory that the information was relevant because Jane's sexual activity was somehow inconsistent with her plan to make serious abuse allegations later that same day is unpersuasive and does not change our relevance calculus. Indeed, Vasquez abandons this argument on appeal. Instead, acknowledging Vasquez's admissions with respect to the over-14 abuse, appellate counsel admits "[t]he sole contested issue in this case was, did [he] start having sex with his daughter before she was 14, or only after?" Counsel then claims Jane's sexual behavior was relevant to this issue, because—after preparing herself to sever ties with her family and cementing her relationship with her boyfriend through this sexual act—"it was very much in her interest to make sure that appellant would not return to her life until she was an adult living on her own." In other words, she had a motive to lie regarding the more serious charges alleged to have occurred before she was 14, because it would dramatically increase Vasquez's punishment. We find this argument—which we note could be made without reference to Jane's sexual conduct—both improbable and nonsensical.

Preliminarily, it appears exceedingly unlikely Jane, at age 15, would have been aware of the heightened punishment accorded abusers who molest children under the age of 14. More importantly, however, making up additional crimes was entirely unnecessary to achieve her purported goal—ridding herself of her father until she became an independent adult. Vasquez faced a possible 100-year prison sentence in this case, based on a fraction of the possible offenses with which he could have been charged under the circumstances alleged. As the Attorney General persuasively argues, it makes no sense—given the years of sexual abuse she described and which Vasquez largely admitted—that Jane would have thought more would be necessary to keep Vasquez incarcerated during the less-than-three years it would take for her to turn 18. Indeed, Vasquez was not even tried until she had reached her majority.

Jane's sexual conduct under these circumstances, then, was largely irrelevant. In contrast, as the trial court recognized, the possible prejudicial effect from admission of such evidence could be substantial. Our high court has summarized the scope of the potential prejudice in this context as follows: "The potential prejudice of [evidence of past sexual relations], on the other hand, was substantial. (*U.S. v. One Feather* (8th Cir. 1983) 702 F.2d 736, 739 [the policy of the rape shield law 'to guard against unwarranted intrusion into the victim's private life . . . may be taken into account in determining the amount of unfair prejudice'].) For some jurors, the fact that the victim has engaged in sexual conduct outside of



United States District Court
Northern District of California

> marriage automatically suggests a receptivity to the activity or is proof that the victim got what she deserved—neither of which is a rational or permissible inference. (*U.S. v. Kasto* (8th Cir. 1978) 584 F.2d 268, 271–272.) In addition, the Legislature has determined that victims of sexual assault require greater protections beyond those afforded other witnesses against surprise, harassment, and unnecessary invasion of privacy (*see generally Government of Virgin Islands v. Scuito* (3d Cir. 1980) 623 F.2d 869, 875–876), and defendant's inquiry would have violated those interests, particularly the state interest 'to encourage reporting by limiting embarrassing trial inquiry into past sexual conduct.' (*Wood v. Alaska* (9th Cir. 1992) 957 F.2d 1544, 1522.)." (*People v. Fontana* (2010) 49 Cal. 4th 351, 370 (*Fontana*).) On these facts, we believe the potential for prejudice as articulated in *Fontana* tips the scale decisively in favor of excluding the evidence of Jane's sexual encounter with her boyfriend.
>
> Indeed, although appellant's counsel claims the concerns expressed in *Fontana* are outmoded, his other argument on this topic—if it is worthy of any comment at all—is notable solely because it illustrates exactly the type of prejudicial thinking condemned by the *Fontana* Court. As stated above, when he was interviewed by the police prior to his arrest, Vasquez claimed Jane was in love with him and had initiated many of the sexual acts at issue. Crediting these self-serving statements as "the only possible explanation" for Jane's repeated abuse,[FN. 4] counsel argues on appeal that the jury would not have been inflamed by evidence of Jane's "tryst" with her boyfriend because they would have considered the fact she had "switch[ed] her affections" to her age-appropriate boyfriend "the proper and right thing for her to do." Of course, in attempting to equate Jane's teenage relationship with the years of repeated molestation she endured at the hands of her father, counsel seeks to inject the idea that Jane was sexually promiscuous and thereby support Vasquez's claim that she initiated the sex. Moreover, evidence of Jane's sexual conduct with her boyfriend might mislead the jury into excusing or minimizing Vasquez's conduct, even though consent is unavailable as a defense under these circumstances. (*See*, *e.g.*, *People v. Soto* (2011) 51 Cal. 4th 229, 238 [as children under 14 cannot give valid legal consent to sexual acts with adults, child victim's alleged consent in section 288 cases is "immaterial *as a matter of law*" (italics in original)].)
>
>> FN. 4. Incredibly, counsel bases this conclusion on the offensive suggestion that Jane must have *wanted* to engage in sex with her father because, had she not, the young, vulnerable immigrant child would simply have slept elsewhere or said no. Suffice it to say that review of the relevant psychological literature on the sexual abuse of children demonstrates the fallacy of this argument. (*See*, *e.g.*, National Center for Victims of Crime, *Effects of Child Sexual Abuse on Victims* (2012) at <http://victimsofcrime.org/media/reporting-on-child-sexual-abuse/effects-of-csa-on-the-victim> [as of January 29, 2019] ["Victims may feel powerless because the abuse has repeatedly violated their body space and acted against their will through coercion and manipulation"].)

> In short, none of Vasquez's contentions gives us cause to disturb the trial court's determination of this matter, which is reviewable on appeal solely for abuse of discretion. (*Fontana*, *supra*, 49 Cal. 4th at p. 370.) Moreover, since we conclude that the trial court did not abuse its discretion in refusing to admit evidence of Jane's sexual activity with her boyfriend, we likewise reject Vasquez's claim that this ruling deprived him of his constitutional rights to confront witnesses or present a defense. (*See People v. Snow* (2003) 30 Cal. 4th 43, 90 [application of the rules of evidence generally does not support a constitutional violation; evidence of marginal probative value "certainly" does not fall outside this general rule].)

*Vasquez*, 2019 WL 337077 at *3-5.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Vasquez is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

2. Analysis

a. Right to Present Defense

The U.S. Constitution gives a criminal defendant the right to present a defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). The Compulsory Process Clause of the Sixth Amendment preserves the right of a defendant in a criminal trial to have compulsory process for obtaining a favorable witness. *Washington v. Texas*, 388 U.S. 14, 19 (1967). The Sixth Amendment right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) (right to compulsory process is not absolute). A defendant "'does not have an unfettered right to offer [evidence] that is incompetent, privileged or otherwise inadmissible under standard rules of evidence.'" *Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (plurality opinion) (alteration in original) (quoting *Taylor*, 484 U.S. at 410). Even relevant evidence may be excluded on account of certain evidentiary rules. *See id.* at 42.

"[T]o say that the right to introduce relevant evidence is not absolute is not to say that the Due Process Clause places *no* limits upon restriction of that right"; rather, it means that the defendant has the heavy burden to show that the decision to exclude evidence "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 42-43 (citation omitted). Even if the exclusion of evidence was a constitutional error, habeas relief is not available unless the erroneous exclusion had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

"Only rarely [has the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013).[1] In *Jackson*, the Supreme Court identified four cases where it had found such a violation: *Holmes v. South Carolina*, 547 U.S. 319 (2006); *Rock v. Arkansas*, 483 U.S. 44 (1987); *Chambers v. Mississippi*, 410 U.S. 284 (1973); and *Washington v. Texas*, 388 U.S. 14 (1967).

In *Holmes v. South Carolina*, the Supreme Court held that a criminal defendant's right to present a defense was violated by an evidence rule under which a defendant could not introduce proof of third-party guilt if the prosecution had introduced forensic evidence that, if believed, would strongly support a guilty verdict. 547 U.S. at 331. The constitutional problem was that the general rule (i.e., allowing a defendant to offer evidence of third-party guilt if the evidence was inconsistent with his own guilt and was not speculative) had been "radically" changed by the South Carolina Supreme Court to be contingent on the strength of the prosecution's case. *Id.* at 328. As a result of the state court's radical change in the rule, the rule ceased to rationally serve the end that the general rule was designed to promote – i.e., "to focus the trial on the central issues

[1] In *Nevada v. Jackson*, the Supreme Court reversed the Ninth Circuit's decision granting habeas relief for a petitioner who had been barred from presenting extrinsic evidence of the victim's prior accusations of sexual assault at petitioner's trial for rape. The Ninth Circuit was faulted for viewing the Supreme Court's cases on the right to present a defense at too high a level of generality. *See* 569 U.S. at 512. Although the Supreme Court had held that certain restrictions on a defendant's ability to cross-examine a witness violate the Confrontation Clause, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes." *Id.* "The Ninth Circuit elided the distinction between cross-examination and extrinsic evidence by characterizing the cases as recognizing a broad right to present 'evidence bearing on [a witness'] credibility." *Id.* (alteration in original).

by excluding evidence that has only a very weak logical connection to the central issues." *Id.* at 330.

In *Rock v. Arkansas*, 483 U.S. 44, the Supreme Court held that Arkansas' *per se* rule excluding all hypnotically enhanced testimony was unconstitutional when used to restrict a defendant's right to testify. 483 U.S. at 62. There, the Court explained that "[a] State's legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case. Wholesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections." *Id.* at 61.

In *Chambers v. Mississippi,* the Supreme Court held that the defendant was denied a fair trial when the state's evidentiary rules prevented him from calling witnesses who would have testified that another witness made trustworthy, inculpatory statements on the night of the crime. 410 U.S. at 302. It was the combination of the rigid application of the State's evidence rules and the fact that the proffered evidence bore considerable assurances of trustworthiness and reliability that led to the due process violation in *Chambers*. *See id.* at 302-03. The Supreme Court specifically pointed out that its holding did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Id.*

The challenged rule in *Washington v. Texas*, provided that principals, accomplices and accessories in the same crime could not be used as witnesses for each other. 388 U.S. at 15. This rule violated a defendant's right to compulsory process because "the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23.

The California Court of Appeal's rejection of Mr. Vasquez's claim that he was prevented from presenting evidence of Jane's sexual activity on the day she contacted police was not contrary to, or an unreasonable application of, these Supreme Court holdings. Mr. Vasquez has not identified any Supreme Court holding that the right to present a defense or the right to due

process includes a right to present the type of evidence Mr. Vasquez sought to admit in this case.

If anything, the excluded evidence here had no more probative value than the evidence regarding the victim's sexual activity excluded in *Jackson*. *Id*. at 506, 512. The evidence excluded here had, for reasons stated by the Court of Appeal, only slight, if any, probative value in this case. The Court of Appeal reasonably determined that Jane's sexual activity on the day she reported the abuse to the police was only minimally relevant. The California Court of Appeal noted that Mr. Vasquez was able to present evidence that Jane had a boyfriend against her father's wishes, and this evidence provided a motive for her to lie about the abuse and was relevant to her credibility. *Vasquez*, 2019 WL 337077 at *3; 5RT at 683-85, 850-51. This argument was presented during closing argument and provided the jury with a possible reason for Jane to fabricate the molestation. *Vasquez*, 2019 WL 337077 at *3; 12RT at 1303-04, 1314. Trial courts have wide latitude in deciding what evidence comes in. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"); *Montana v. Egelhoff*, 518 U.S. at 42 (citing Federal Rule of Evidence 403 as an example of "familiar and unquestionably constitutional evidentiary rules" that "authorize the exclusion of relevant evidence.").

It is highly doubtful whether the Supreme Court precedent could support a finding that a routine application of an otherwise permissible rule of evidence violated Mr. Vasquez's right to present a defense. At the very least, "fairminded jurists could disagree" on whether the U.S. Supreme Court's cases on the right to due process and the right to present a defense extend to the routine application of an otherwise permissible rule, such as the rule regarding evidence of a victim's sexual conduct being relevant and not inadmissible.

Nor, for the reasons stated above, has Mr. Vasquez established the state court's application of the rule was unreasonable. *See Harrington,* 562 U.S. at 101; *see also id.* at 103 (petitioner must show the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement”).

Finally, even if there was an error, it did not have a substantial and injurious effect on the judgment pursuant to *Brecht* in light of all the evidence against him, including his admission that he had molested Jane. Mr. Vasquez is not entitled to the writ on this claim.

b. Confrontation Clause

Nor is Mr. Vasquez entitled to relief regarding his Confrontation Clause claim. The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Trial judges retain wide latitude to impose reasonable limits on cross-examinations based on concerns about, among other things, “harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.” *Van Arsdall*, 475 U.S. at 679. A defendant “can prove a violation of his Sixth Amendment rights by ‘showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby ‘to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.’” *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009) (omission in original) (quoting *Van Arsdall*, 475 U.S. at 680). A showing of constitutional error under the Confrontation Clause only merits habeas relief if the error was prejudicial, that is, if it had a “substantial and injurious effect or influence in determining the jury's verdict.” *Id.* at 1100 (9th Cir. 2009) (quoting *Brecht*, 507 U.S. at 637).

The California Court of Appeal’s determination that there was no Confrontation Clause violation in the exclusion of this evidence was not an unreasonable application of U.S. Supreme Court precedent, which itself accords trial judges “wide latitude” to impose reasonable limits on cross-examination based on concerns about questioning “that is repetitive or only marginally relevant.” *Van Arsdall*, 475 U.S. at 679; *see, e.g., Plascencia v. Alameida*, 467 F.3d 1190, 1201 (9th Cir. 2006) (exclusion of cross-examination that would have provided cumulative or repetitive evidence did not violate Confrontation Clause or was harmless error); *United States v. Sua*, 307 F.3d 1150, 1153 (9th Cir. 2002) (Confrontation Clause not violated by exclusion of codefendant’s

guilty plea with dismissal of a charge when offered by defendant to establish government's belief in the codefendant's innocence (and, by inference, in defendant's innocence) based on dismissal of that charge because potential jury confusion and undue delay outweighed defendant's interest in presenting the marginally relevant evidence).

It was not unreasonable for the California Court of Appeal to determine that Jane's sexual activity with her boyfriend on the date in question, if relevant at all, had de minimis probative value and was highly prejudicial. As noted above, the jury was aware that (1) Jane had a boyfriend; (2) Mr. Vasquez opposed the relationship; and (3) Mr. Vasquez's opposition to the relationship already provided a motive for her to lie. Given the evidence presented to the jury, it was reasonable for the Court of Appeal to conclude that the federal constitution did not require the trial court to allow the jury to hear specific evidence about her sexual activity with her boyfriend on the day in question. There was no constitutional error which was contrary to or constituted an unreasonable application of any holding of the U.S. Supreme Court. Nor has Mr. Vasquez shown that if there was an error, that it had a substantial and injurious effect on the judgment. This claim is denied.

B. Unanimity Instruction

Mr. Vasquez contends that the trial court erred in issuing a modified unanimity jury instruction, CALCRIM 3501, because due to the combination of specific and generic evidence presented, the instruction may have led the jury to convict without being truly unanimous. Petition at 5.

1. Background

In this case the trial court told the jury that Mr. Vasquez was charged with 36 counts of lewd acts on a minor under the age of 14; 10 counts of unlawful sexual intercourse with a minor under the age of 16; and 21 counts of oral copulation with a minor under the age of 16, all in various relevant timeframes. 9RT at 1255. The trial court then instructed the jury pursuant to CALCRIM 3501, stating:

> "The People have presented evidence of more than one act to prove that the defendant committed these offenses. [¶] You must not find the defendant guilty unless: [¶] One, you all agree that the People



United States District Court
Northern District of California

> have proved that the defendant committed at least one of these acts, and you all agree on which act he committed for each offense; or, two, you all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged. [¶] Each of the counts charged in this case is a separate crime. [¶] You must consider each count separately and return a separate verdict for each one."

9RT at 1255-56.

The California Court of Appeal set forth the relevant law and denied this claim. The court stated:

> A criminal defendant's right to a jury trial includes the right to a unanimous verdict, including unanimous agreement on the act constituting the offense charged. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (Russo).) "[C]ases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Russo*, at p. 1132.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*Ibid*.)
>
> Historically, child molestation cases presented difficult issues regarding how properly to instruct a jury on the constitutional requirement of a unanimous verdict when a child-victim testified generically about numerous undifferentiated acts of molestation occurring over a particular period of time—i.e., "an act of intercourse 'once a month for three years.'" (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).) However, in *Jones*, our high court soundly rejected the contention that "jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described." (*Id*. at p. 321.) Thus, the Jones court concluded, a child-victim must only provide evidence with respect to the kind of act or acts committed, the number of acts, and the general timeframe in which the acts occurred. (*Id*. at p. 316.) While "[a]dditional details regarding the time, place or circumstance of the various assaults *may assist in assessing the credibility or substantiality of the victim's testimony*," such ancillary matters are "not essential to sustain a conviction." (*Id*. at p. 316, italics added.)
>
> To safeguard the constitutional requirement of unanimity under these circumstances, the *Jones* court further directed as follows: "In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed

all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Jones*, *supra*, 51 Cal.3d at pp. 321–322.) This is exactly what was done in this case.

. . . .

CALCRIM No. 3501—the instruction given by the trial court—is an alternative instruction to the general unanimity instruction, CALCRIM No. 3500. (*People v. Fernandez* (2013) 216 Cal. App. 4th 540, 555 (*Fernandez*).) It "affords two different approaches for the jury to reach the required unanimity. The first is the same as that set forth in CALCRIM No. 3500: agreement as to the acts constituting each offense. But unanimity may also be found under CALCRIM No. 3501 if the jury agrees 'that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged].'" (*Fernandez*, at p. 556.)

Vasquez asserts it was error to give the modified unanimity instruction in this case because—given the mix of specific and generic evidence presented—it may have led the jury to convict without being truly unanimous. We review a claim of instructional error de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.) In doing so, "we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal. 4th 1186, 1229.) As a baseline, "[w]e assume the jurors are intelligent persons capable of understanding and correlating all jury instructions given them." (*People v. Milosavljevic* (2010) 183 Cal. App. 4th 640, 649.)

On appeal, Vasquez asserts the jury in this case *must* have been confused with respect to the unanimity instruction, because it convicted him of all 36 counts of lewd acts on a minor under the age of 14, even though he presented irrefutable evidence Jane's mother never attended developmental classes with Jane's younger sister on weekends, a time during which Jane reported some of these molestations occurred. According to Vasquez, since there was no testimony supporting 36 specific acts during the under-14 timeframe, the jury must have relied on Jane's generic testimony to convict. Given this record, Vasquez asserts it was unlikely that every juror believed he "committed all the acts alleged to have occurred during this time period." Additionally, if some jurors convicted on those counts based on the "baby school" molestations while others—convinced the "baby school" molestations never happened—based their convictions on the acts of nighttime lewd touching and intercourse also alleged during the same timeframe, there is a "real chance," Vasquez urges, the verdicts were not truly unanimous as to the underlying acts committed.

We are not convinced that the jury was misled with respect to

> unanimity in this case. Instead, it appears the jury applied the unanimity instruction exactly as it was intended, to provide a pathway to conviction where "[a] young victim such as [Jane], assertedly molested over a substantial period by a parent or other adult residing in [her] home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents." (*Jones, supra*, 51 Cal. 3d at p. 305.) The instruction given in this case was quite clear: To convict on each count charged, the jury either had to agree on a specific act underlying the charge or agree Vasquez committed all of the acts alleged to have occurred during the relevant time period.
>
> The most likely scenario here—and the one which Vasquez simply ignores—is that the jury found Jane wholly credible and believed all of the alleged acts transpired, despite certain inconsistencies in her testimony with respect to timing and circumstances. As the Jones Court highlighted, "credibility is usually the 'true issue' in these cases." (*Jones*, *supra*, 51 Cal.3d at p. 322.) Thus, "'the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act.'" (*Ibid*.) In these proceedings, Jane described several specific types of sexual misconduct inflicted upon her by Vasquez repeatedly over the course of years. While, as stated above, details regarding the exact timing, place, or circumstances of the various assaults might have assisted the jury in assessing her credibility, such ancillary matters were not necessary to support the convictions. (*Id*. at p. 316.) Rather, to the extent Vasquez cites discrepancies in Jane's statements, "the inconsistency went only to the weight and credibility of the evidence and, on appeal, we do not disturb the jury's resolution of that inconsistency." (*People v. Tompkins* (2010) 185 Cal. App. 4th 1253, 1261.) In short, on these facts (viewed, as we must, in the light most favorable to the prosecution), we see no indication of instructional error.

*Vasquez*, 2019 WL 337077 at *7-8.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Vasquez is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

2. Analysis

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process."

*Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 437). Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht* at 637.

Criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. *See Apodaca v. Oregon*, 406 U.S. 404, 410-12 (1972) (rejecting 6th Amendment right to jury trial challenge to 10-2 state jury verdict). In addition, "[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. N. Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) (footnotes omitted).

Mr. Vasquez contends that because he was convicted of all counts of lewd acts on a minor under the age of 14, the jury must have found that he molested Jane on the weekend and during the week using both the specific and generic evidence. He argues this finding was an error because his wife's testimony showed that she had not been gone on the weekends, when some of the molestation allegedly occurred, and that the jury therefore must not have had unanimity in reaching its verdict.

The state appellate court's determination that it was proper to issue CALCRIM 3501 was not an unreasonable determination of the facts. Nor was its rejection of Mr. Vasquez's challenge

to CALCRIM 3501 contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court. As noted by the state court, it is wholly possible that the jury credited Jane's testimony and did not credit the mother's testimony in finding she had been molested during the week and on weekends and that Mr. Vasquez was guilty of all counts. Regardless, federal law is clear that, at least in noncapital cases, there is no federal right to a unanimous jury verdict. *Schad*, 501 U.S. 624 at 634 n.5. When there is no "clearly established Federal law, as determined by the Supreme Court of United States," the state court's adjudication of the claim cannot be said to be an unreasonable application of such law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In *People v. Jones*, 51 Cal. 3d 294 (Cal. 1990), the California Supreme Court found that a child molestation victim must only provide evidence with respect to the kind of act or acts committed, the number of acts and the general timeframe when they occurred. *Id*. at 316. The Ninth Circuit has found that the result of *Jones* is neither contrary to nor an unreasonable application of United States Supreme Court precedent. *See Brodit v. Cambra*, 350 F.3d 985, 988–89 (9th Cir. 2003) (rejecting claim that petitioner was denied notice of charges, in violation of due process, by information alleging sexual abuse on unspecified dates as approved in *Jones*). *Brodit* holds that § 2254(d)(1) precludes a claim that due process is violated by the absence in the charging document of precise dates. *Id*. It follows that § 2254(d)(1) also precludes a claim that due process is violated by a conviction in the absence of evidence to establish jury unanimity regarding the precise dates of when the acts occurred.

The state appellate court could have reasonably concluded that there was no reasonable likelihood that the jury misapplied the challenged instruction in a way that violated the constitution. Furthermore, even if the trial court erred in issuing the instruction, Mr. Vasquez has failed to show that the error had a substantial and injurious effect or influence in determining the jury's verdict. For all these reasons, he is not entitled to habeas relief on this claim. [2]

---

[2] With respect to this claim in the petition, Mr. Vasquez also briefly states that his attorney was ineffective for failing to obtain witnesses and documents that would have benefited him and shown his character and innocence. Petition at 6. This was not construed as a claim and was not exhausted in state court. Nor has petitioner informed the Court that he intended to bring this claim. To the extent it could be construed as a separate claim, it is still denied on the merits. Mr. Vasquez has provided no further information regarding what specific witnesses should have been

3. No Certificate of Appealability

A certificate of appealability will not issue because reasonable jurists "would not find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is denied.

## VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. The Clerk shall enter Judgment and close the file.

**IT IS SO ORDERED**.

Dated: March 9, 2020

EDWARD M. CHEN
United States District Judge



obtained and what would have been their testimony, nor has he identified or described any specific documents that would have helped his defense. A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). To the extent Mr. Vasquez sought to bring this claim, it is denied. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations not supported by specific facts in petition do not warrant habeas relief).